## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **SAMUEL ESPINOZA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-11-146** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions** | § | |
| **Division,** | § | |
| **Respondent.** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional

Institutions Division ("TDCJ-CID"), and currently is incarcerated at the Eastham Unit in

Lovelady, Texas.  The actions about which he complains occurred in Nueces County,

Texas.  Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and

2254 on April 30, 2011 (D.E. 1).[1]  The underlying conviction which is the subject of the

petition is a 2006 Nueces County conviction for one count of solicitation to commit

capital murder.  Petitioner claims that his constitutional rights were violated during the

trial and appellate proceedings.

On August 8, 2011 respondent filed a motion for summary judgment to which

petitioner responded on September 2, 2011 (D.E. 11, 14).  As discussed more fully below,

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on April 30, 2011 and it is considered filed as of that date.  See Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998).

it is respectfully recommended that respondent's motion for summary judgment be granted and petitioner's cause of action for habeas corpus relief be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331. Petitioner was convicted in Bee County, Texas. 28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

The Thirteenth Court of Appeals summarized the facts in petitioner's case as follows:

> Arnoldo Campos, a confidential informant, testified that he met with petitioner's [2] girlfriend and co-defendant, Herminia ("Alicia") Ozuna, and her father, Augustine Perez, to discuss a potential drug deal. Campos negotiated to purchase thirty kilos of cocaine from Ozuna. Ozuna arranged for Campos to meet petitioner, who had "connections," to provide the cocaine for sale. Ozuna and petitioner were acting as "brokers" for the drug deal. Campos testified that Ozuna and petitioner's profit from the proposed drug sale would be about $20,000 to $25,000.
>
> Campos testified that at a meeting with Ozuna and Perez, Ozuna told Campos that she wanted to find someone to kill her common-law husband, Federico Hernandez. Eventually, Campos tape-recorded one of his conversations with Ozuna, in which they discussed the drug deal and Ozuna's desire to have her husband killed. Campos testified that Ozuna said that petitioner knew of her plan to have her husband killed. Campos told Ozuna it would cost about $5,000 to hire someone to kill her husband, and she agreed to pay that amount.
>
> Campos met with Ozuna and petitioner at a ranch to discuss the details of the drug deal. Campos told Ozuna he had found a "hit man" to kill her husband.

---

[2]The Court of Appeals referred to Flores as "appellant." To be consistent with the terminology used in this Memorandum and Recommendation, "appellant" has been changed to "petitioner."

According to Campos, petitioner did not act surprised by the murder-for-hire
discussion, and when Campos asked him if he was "okay" with the plan, petitioner
said he was and "was just gonna do everything possible to help [Ozuna] out."
Campos testified that Texas Ranger Roberto Garza was advising him as to how to
set up a meeting between Ozuna and an undercover agent portraying a prospective
"hit man." Pursuant to Garza's instructions, Campos called Ozuna and told her to
meet the "hit man" at a specific room at a motel in Corpus Christi. Campos
testified that based on his conversation with Ozuna and petitioner, petitioner
"knew exactly what was gonna happen" in the murder-for-hire plan.

John Lubbock, a retired officer with the narcotics unit of the Texas Department of
Public Safety, testified that he agreed to work undercover as the "hit man" hired by
Ozuna. Lubbock met petitioner and Ozuna at the Corpus Christi motel room.
Garza and local law enforcement officers had arranged to videotape the meeting in
the motel room. The videotape was shown to the jury. Lubbock identified
petitioner as the person in the videotape with Ozuna. He testified that Ozuna gave
him a picture of Hernandez (the intended victim), a note with Hernandez's address
on it, and forty dollars as down payment for the murder. On cross-examination,
Lubbock testified that during the meeting, petitioner indicated that he wanted the
victim killed with a pistol by holding his hand and saying, "I want it done that
way."

Garza testified that he arranged to videotape the meeting and was in the adjacent
hotel room during the meeting "ready to kick the door down" "in case something
went wrong." A day or so later, Garza obtained warrants to arrest Ozuna and
petitioner.

Espinoza v. State, No. 13-06-116-CR, 2008 WL 3854002 (Tex. App. –Corpus Christi,

May 22, 2008)(not designated for publication)(located herein at D.E. 7-3, pp. 3-14).

Although Lubbock testified that petitioner indicated he wanted the victim killed by

holding his hand as if he had a gun and saying, "I want it done that way," (3 R.R. 205-

206; D.E. 7-12 at 207-208),[3] the transcript of the video-taped encounter does not show

---

[3] "R.R." refers to the Reporter's Record in this case.

that petitioner said that.  The transcript does not differentiate between the speakers, but contains in relevant part the following:

> When you leave this room here, there's no turning back.  There's no turning back. I know that.  You sure?  That's what I told her, I said you sure about this?  She said yep.  Both of you are sure that's what you wanna do.  I don't care.  All right. I want it done, yes.  You want him shot and make it look like an accident.  No problem.

(3 R.R. 197; D.E. 7-12 at 199).  Petitioner concedes that Ozuna turned to him during this exchange and he "impulsively mimicked through a hand gesture with a handgun" but that he did not say anything (D.E. 1-2, at 32).

Officer Ronald Smithwick testified that no drug transaction actually occurred because law enforcement authorities discovered that undercover officers were participating in both the proposed buying and selling of the drugs (3 R.R. 48-51; D.E. 7-12 at 50-53).  After the discovery, the focus of the investigation shifted to the murder-for-hire plot suggested by Ozuna's declaration that she wanted to hire someone to kill her husband (3 R.R. 51, 172; D.E. 7-12 at 53, 174).

Following a jury trial petitioner was convicted of solicitation to commit capital murder.  Ex Parte Espinoza, WR-75,126-01 at 135-137 (D.E. 7-19 at 140-142).  Petitioner was sentenced to a term of 60 years.  Id. at 135 (D.E. 7-19 at 140).  Petitioner filed an appeal and his conviction was affirmed on May 22, 2008.  Espinoza at *5 (D.E. 7-3 at 14). He then filed a petition for discretionary review that was refused on January 23, 2009. Espinoza v. State, Case No. PD-1060-08 (D.E. 7-3, p. 3).

Petitioner filed an application for habeas corpus relief in state court on December 13, 2010.  Ex Parte Espinoza, WR-75,126-01 at 2-60 (D.E. 7-19 at 7-65).  The Texas Court of Criminal Appeals denied his application without written order on January 26, 2011.  Id. at "Action Taken" page (D.E. 7-19 at 2).

Petitioner filed his application in this court on April 30, 2011.  He makes the following allegations:

(1) He received ineffective assistance of counsel when his trial attorney

    (a) failed to object to evidence offered at the suppression hearing;
    (b) failed to have petitioner testify
        (i)  at the suppression hearing;
        (ii) at trial regarding his entrapment defense;
        (iii)at trial regarding the issue of aiding and abetting;
        (iv) at the punishment phase regarding his mental condition;
    (c) failed to subpoena Dr. Raul Capitaine
        (i) to testify at the suppression hearing;
        (ii) to testify at the trial regarding the issue of entrapment and aiding and abetting;
        (iii) to testify on the issue of petitioner's insanity;
    (d) failed to call any witnesses on petitioner's behalf during the trial;
    (e) failed to present any defense;
    (f) failed to timely object to the introduction of evidence referring to petitioner as a drug dealer and smuggler;
    (g) elicited testimony from a witness that indicated petitioner was a drug dealer;
    (h) failed to raise a confrontation clause objection in relation to the introduction of the recorded telephone calls;
    (i) failed to request an instruction on accomplice witness testimony;
    (j) failed to timely bench warrant petitioner so that he could appear at the hearing on his motion for new trial.

(2) His attorney's mistakes resulted in cumulative error.

(3) He received ineffective assistance of counsel when his appellate attorney  failed to argue on appeal that the evidence used to convict petitioner was legally insufficient.

5

(4)  His right to due process was violated when

    (a)  the trial court failed to conduct a hearing on whether petitioner was incompetent to stand trial, whether he was insane at the time he committed the offense or both and
    (b) the trial court allowed him to plea to a fundamentally defective indictment over counsel's objections.

(5)  The trial court judge improperly communicated with the jury before and after the trial.

In his motion for summary judgment, respondent argues that petitioner's claim that his attorney was ineffective for failing to object to the admission of details surrounding his arrest is unexhausted and procedurally barred, but that the petition is not otherwise barred by limitations or subject to the successive petition bar.  Regarding petitioner's remaining claims, respondent argues that petitioner failed to make the requisite showing that he is entitled to relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In his response to the motion for summary judgment, petitioner reiterated his claims that he is entitled to habeas relief.

## APPLICABLE LAW

### A.  Exhaustion

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State.  28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."

Sones v. Hargett, 61 F.3d 410, 414 (5th Cir.1995).  The exhaustion requirement "is not

jurisdictional, but reflects the policy of federal-state comity, which is designed to give

state courts the initial opportunity to consider and correct alleged violations of their

prisoners' federal rights." Morris v. Dretke, 413 F.3d 484, 490-91 (5th Cir. 2005)(citing

Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003)).  Exceptions exist only where

there is an absence of available State corrective process or circumstances exist that render

such process ineffective to protect the rights of the applicant.  See 28 U.S.C. §

2254(b)(1)(B).

        If a petitioner fails to exhaust state court remedies and the court to which the

petitioner would be required to present his claims in order to meet the exhaustion

requirement would find the claims procedurally barred, there is a procedural default for

purposes of federal habeas.  Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct.

2546, 2557, 115 L.Ed.2d 640 (1991).  When a petitioner has defaulted his federal claims

in state court by failing to follow applicable state procedural rules, the claims may not be

reviewed in federal court unless the petitioner demonstrates cause for the default and

actual prejudice as a result of the alleged error.  Sawyer v. Whitley, 505 U.S. 333, 338,

112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).  To show cause, a petitioner must establish that

some objective factor external to the defense impeded his efforts to comply with the state

procedural rule.  Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d

397 (1986).  To show actual prejudice, a petitioner must demonstrate that but for the

error, he might not have been convicted.  Pickney v. Cain, 337 F.3d 542, 545 (5th Cir.

2003)(citing United States v. Guerra, 94 F.3d 989, 994 (5th Cir. 1996)).

A federal habeas petitioner shall not be deemed to have exhausted the remedies

available in the state courts "if he has the right under the law of the State to raise, by any

available procedure, the question presented." 28 U.S.C. § 2254(b)(1)(C).  In Texas, a

criminal defendant may challenge a state court conviction and sentence by taking the

following paths: (1) the petitioner may file a direct appeal followed, if necessary, by a

petition for discretionary review in the Texas Court of Criminal Appeals or (2) he may

file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal

Procedure in the convicting court, which is transmitted to the Texas Court of Criminal

Appeals once the trial court determines whether findings are necessary, or he may do

both.  See Tex. Code Crim. Proc. 11.07 § 3(c) and Busby v. Dretke, 359 F.3d 708, 723

(5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims

through one complete cycle of either state direct appeal or post-conviction collateral

proceedings.").  Petitioner in this case filed both a petition for discretionary review and a

state habeas action.

Respondent argues that petitioner did not present in his state habeas action his first

claim, that his attorney failed to "make a legally complete and appropriate objection to the

admission of details surrounding his arrest."  (Mot. for Sum. Jmt., D.E. 11, p. 11).  It is

unclear that petitioner was bringing a claim apart from his other claims regarding the

suppression of his confession, because this claim was not included in the numbered list of

8

other claims he made.  See Pet. Brf., pp. 6-7 (D.E. 1-1, pp. 7-8).  Nevertheless,

respondent is correct that any separate claim that petitioner intended to make regarding

the admission of details surrounding his arrest was not exhausted.  Were he to attempt to

bring it now, it would be barred as second or successive.  See Tex. Code Crim. Proc. Ann.

art. 11.07 § 4 (West 2011) and Williams v. Thaler, 602 F.3d 291, 305-306 (5th Cir.

2010)(procedural default occurs when prisoner fails to exhaust available state remedies

and state court would now find claims procedurally barred).  In order to overcome the

procedural bar, petitioner would have to show cause and prejudice for the failure to

exhaust and he has not done so.  Accordingly, petitioner's claim that his attorney failed to

object regarding the admission of facts related to his arrest should be denied as

unexhausted and procedurally barred.

## B.  Merits

### 1.  Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim

that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim:

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.  Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  Harrington, 131 S.Ct. at 786.  Even a strong case for relief does not mean the state court's contrary conclusion was

10

unreasonable.  Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155

L.Ed.2d 144 (2003)).

 The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops

short of imposing a complete bar on federal court litigation of claims already rejected in

state proceedings. . . . It preserves authority to issue the writ in cases where there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with

this Court's precedents.  It goes no farther."  Id.  "[A] state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  Id. at 786-787.  In addition, if a

decision by a state court is silent as to the reasons for the refusal, a federal habeas court

can "look through" the decision and evaluate the last reasoned state court decision.

Bledsue v. Johnson, 188 F.3d 250, 256 (5th Cir. 1999).

 A state court's factual findings are presumed to be correct and a petitioner has the

burden of rebutting the presumption with clear and convincing evidence.  Garcia v.

Quarterman, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference

extends not only to express findings of fact, but to the implicit findings of the state court.

Id.  In addition, "where a state court's decision is unaccompanied by an explanation, the

habeas petitioner's burden still must be met by showing there was no reasonable basis for

the state court to deny relief."  Richter, 131 S.Ct. at 784.

### 2.  Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Id., 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id., 466 U.S. at 690, 104 S.Ct. at 2066.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing

> court, the attorney observed the relevant proceedings, knew of materials outside
> the record, and interacted with the client, with opposing counsel, and with the
> judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; . . . The question is
> whether an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 788. In addition, federal habeas courts must guard against the

danger of equating unreasonableness under Strickland with unreasonableness under §

2254(d). "When § 2254 (d) applies, the question is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard." Id.

### a. Failure to Have Petitioner Testify

Petitioner argues that his attorney was ineffective because he did not allow

petitioner to testify at the suppression hearing, at trial, or during the punishment phase of

his case.

### (1) Suppression Hearing

A suppression hearing was held in petitioner's case to discuss the admissibility of

a statement he made to a law enforcement officer. (1 Supp. R.R. 14-16, 22-70; D.E. 17-19

at 25-73). Petitioner did not testify at the hearing. As part of the state habeas record,

petitioner's attorney submitted an affidavit discussing the allegations raised by petitioner.

Ex Parte Espinoza, WR-75,126-01 at 77-81 (Affidavit of Mark DiCarlo, D.E. 7-19 at 82-

86). The attorney stated that petitioner did not ask to testify at the pre-trial hearing and

did not give any indication that he could have testified that he misunderstood his legal

rights or that he did not voluntarily give them up when he made his statement.  In

addition, petitioner's attorney did not want petitioner to testify at the suppression hearing

because the testimony could have been used to cross-examine him at trial.  The attorney

believed his concern was especially valid in petitioner's case because the statement he

gave was not conclusory regarding his guilt.  Ex Parte Espinoza, WR-75,126-01 at 78

(DiCarlo Aff., D.E. 7-19 at 83).

The trial court entered findings of fact and conclusions of law in which it found the

attorney's statements to be credible and concluded that petitioner had received competent

representation.  Ex Parte Espinoza, WR-75,126-01 at 108-109, 113 (D.E. 7-19 at 113-

114, 118).  Petitioner neither argued nor presented evidence to show that the conclusion

of the state court on this issue was contrary to Supreme Court precedent.  Accordingly, he

has failed to show that he is entitled to habeas relief on this issue.

### (2) Trial

Petitioner argues that his attorney was ineffective for failing to call him to testify at

trial.  In particular he argues that he should have been allowed to testify regarding his

entrapment defense and also regarding the issue of aiding and abetting.

Petitioner's attorney stated that petitioner refused to testify at the guilt-innocence

stage of the trial.  "Had he testified, he could easily have explained to the jury that he did

not know that Ozuna was going to hire a hit man to kill her husband and that he thought

she was going to drop it after he found out about it."  Ex Parte Espinoza, WR-75,126-01

at 79-80 (DiCarlo Aff., D.E. 7-19 at 84-85).  At the conclusion of the guilt-innocence

phase of the trial petitioner stated that he understood that he had the right to testify but that he did not want to testify and that his attorney did not try to influence his decision (5 R.R. 6-7; D.E. 7-14 at 7-8).  The state trial court found the attorney's statement to be credible and determined that his attorney rendered effective assistance.

Petitioner provided no evidence to support his allegation that he wished to testify but was not allowed to do so by his attorney.  "A habeas petitioner must make specific allegations; 'conclusory allegations unsupported by specifics,' or 'contentions that in the face of the record are wholly incredible" will not entitle one to discovery or a hearing." Perillo v. Johnson, 79 F.3d 441, 444 (5th Cir. 1996)(quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).  Petitioner states only that his attorney did not call him to testify.  Given his statement under oath that he knew he had the right to testify but chose not to do so, in order to overcome the presumption of correctness afforded the state court decision petitioner would have to provide some evidence that he told his attorney that he wanted to testify but was not allowed to do so. Because he has failed to provide such evidence, respondent is entitled to summary judgment on this issue.

**(3) Punishment Hearing**

Petitioner argues that his counsel was ineffective for failing to call him to testify regarding his mental impairment at the punishment phase of the trial.  Petitioner has been

diagnosed with depression, dementia and psychosis (1 C.R. 77-84; D.E. 7-7 at 83-90).[4] Petitioner's attorney did not address his decision to not call petitioner in his affidavit. Nevertheless, the trial court made a finding that petitioner failed to present any evidence showing that he wanted to testify at the punishment phase of his trial or that what he would have said would have influenced the jury to assess a lesser sentence. The habeas court concluded that petitioner failed to show that his attorney was ineffective for not calling him to testify at the punishment phase of his trial.

Petitioner has not shown how this finding was contrary to Supreme Court precedent under the AEDPA standard. Accordingly, he is not entitled to habeas corpus relief and judgment should be granted to respondent on this issue.

**(b) Failure to call Dr. Capitaine**

Prior to trial, petitioner was examined by psychiatrist Raul Capitaine, M.D. The purpose of the examination was to determine whether petitioner was competent to stand trial, and also to determine whether petitioner was insane at the time the offense was committed (Order, 1 C.R. 68-71; D.E. 7-7 at 74-77). Following the examination, Dr. Capitaine opined that petitioner was competent to stand trial and was not insane or mentally retarded at the time of the offense (Letters of June 27, 2005, 1 C.R. 72-76; D.E. 7-7 at 78-82). In the evaluation, Dr. Capitaine diagnosed petitioner with depression, exhibited by suicidal thoughts, insomnia, crying and angry outbursts; dementia probably

---

[4]"C.R." refers to the Clerk's Record in this case.

due to a head injury that caused memory impairment; difficulty with abstract thinking and lack of executive functioning; and psychosis with auditory and visual hallucinations since the head injury (Evaluation, 1 C.R. 77-84; D.E. 7-7 at 83-90).

Petitioner argues that his attorney provided ineffective assistance when he decided to not call Dr. Capitaine to testify at the suppression hearing, at the trial regarding the issue of entrapment and aiding and abetting, and to testify on the issue of petitioner's insanity.  In his affidavit, petitioner's attorney stated that he did not believe it was in petitioner's best interest to have Dr. Capitaine testify because there were things in his report that could have hurt petitioner, including that he had "angry outbursts," had been diagnosed with intermittent explosive disorder, admitted to cheating on his driver's license test, had a 1995 conviction for burglary of a habitation and had a history of unprovoked assaultive conduct.  The attorney also had some of petitioner's earlier mental health records where it was noted that he beat his own dogs and the attorney was afraid that evidence would come out at trial.  Ex Parte Espinoza, WR-75,126-01 at 80 (DiCarlo Aff., D.E. 7-19 at 85).

In addition, petitioner's attorney noted that petitioner appeared to be rational and responsive in conversations before and during trial and appeared to be competent.  Nor did he appear to be insane in the video tape made at the time of the offense.  Also, the attorney believed that rather than pursue an insanity defense, the best trial strategy was to show that petitioner did not know of Ozuna's plan to hire a killer at the time he drove her to the meeting and that he did nothing meaningful to encourage or aid her in that plan.  Ex

Parte Espinoza, WR-75,126-01 at 78 (DiCarlo Aff., D.E. 7-19 at 83).  The trial court found that based on the attorney's statements, he was not ineffective for failing to call Dr. Capitaine to testify.

Petitioner argues that Dr. Capitaine could have explained that petitioner's dementia affected his ability to knowingly waive his rights at the suppression hearing because he had difficulty understanding abstract concepts.  While petitioner may be correct that Dr. Capitaine could have given such testimony, his attorney weighed the possible benefits of Dr. Capitaine's testimony against the possible negative outcomes and made a decision to not call Dr. Capitaine.  A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011)(internal quotations and citations omitted).  Petitioner has not shown that his attorney's decision, even if not the best one in hindsight, was such a poor strategic choice that it rose to the level of ineffective assistance of counsel.  Respondent is entitled to summary judgment on this issue.

**(c) Failure to Call Witnesses on Petitioner's Behalf During Trial**

Petitioner argues that his attorney was ineffective for failing to call any witnesses to testify during the trial.  "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution." Sayre v.

18

Anderson, 238 F.3d 631, 636 (5th Cir. 2001)(citations omitted).  In order to show

prejudice under Strickland, a movant must show not only that the testimony would have

been favorable, but also that the witnesses would have testified at trial.  Alexander v.

McCotter, 775 F.2d 595, 602 (5th Cir. 1985).

      In this case, the petitioner does not name any witness that his attorney should have

called, or describe what their testimony would have been.  His attorney stated in his

affidavit that he could find no witnesses to dispute petitioner's role in the alleged

conspiracy and petitioner did not name any witnesses.  Ex Parte Espinoza, WR-75,126-01

at 80 (DiCarlo Aff., D.E. 7-19 at 85).  The trial court found that the attorney's statements

were credible and that he did not provide ineffective assistance of counsel.  Ex Parte

Espinoza, WR-75,126-01 at 112 (D.E. 7-19 at 117).  Petitioner has not shown that the

conclusion was in error under the AEDPA standard.  Accordingly, judgment should be

entered for respondent on this issue.

    **(d) Failed to Present Any Defense**

      Petitioner argues that his attorney failed to present any defense, but other than the

specific claims of ineffective assistance of counsel that he made and that are addressed

herein, he does not describe what he means by his allegation.  Although *pro se* habeas

petitions are construed liberally, conclusory allegations on a critical issue are insufficient

to raise a constitutional issue.  Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990)(citing

Ross v. Estelle, 694 F.2d 1008, 1011-12 and n. 2 (5th Cir. 1983)).  The record shows that

his attorney cross-examined the prosecution's witnesses, made timely objections, moved

for a directed verdict and argued to the jury that there was not enough evidence on which

to base a conviction.  Petitioner's assertion that his attorney did not present any defense is

without merit.

### (e) Failed to Object To Evidence Referring to Petitioner as Drug Dealer and Smuggler

Petitioner notes that much of the testimony at his trial related to the drug

transaction in which petitioner was alleged to have been acting as a broker and argues that

his attorney should have objected to the introduction of the evidence because it was

inherently prejudicial.  Although petitioner's attorney did not object to the evidence

during the trial, he moved at the beginning of the trial that the court order the State to not

refer in any manner to any extraneous offense on the part of the defendant until the court

conducted a hearing and had an opportunity to rule on the admissibility of evidence of

any alleged drug involvement or conspiracy (2 R.R. 4-5; D.E. 7-11 at 6-7).  The court told

petitioner that it had denied a similar motion during a pretrial hearing and that he did not

need to continue to object because he had made a record on it (2 R.R. 5; D.E. 7-11 at 7).

The state habeas court found that the attorney had filed a motion in limine as an

objection to the evidence and it was overruled.  Ex Parte Espinoza, WR-75,126-01 at 114

(D.E. 7-19 at 119).  The court further found that petitioner failed to raise by affidavit any

evidence to suggest that his trial attorney was ineffective in regard to the extraneous

evidence or that his alleged failure to object to extraneous evidence caused him harm or

prejudice.  Id.  Petitioner has not shown that this conclusion was contrary to Supreme Court precedent.  Accordingly, respondent is entitled to summary judgment on this issue.

### (f) Counsel Elicited Testimony That Petitioner Was a Drug Dealer

Petitioner argues that his attorney rendered ineffective assistance when he elicited testimony from a prosecution witness linking petitioner to a drug cartel.  The prosecution presented digital copies of recorded conversations between Ozuna and her various relatives and acquaintances while Ozuna was in jail after she was arrested for the murder-for-hire scheme.  At one point, a voice was heard to say the following, in relation to petitioner, "So, but I mean, I don't have the connections that Sam and his mom have.  I mean, he works for the damn Medallines (ph. sp) and they have the connections all over the damn place." (4 R.R. 123; D.E. 7-13 at 125).

When petitioner's attorney was cross-examining the officer who introduced the recordings, he asked him if he knew the meaning of "Medellin" and the officer responded that the term referred to South American people who are involved in drugs (4 R.R. 161-162; D.E. 7-13 at 163-164).  The attorney then asked him if he knew the word for "mechanic" in Spanish and the officer told him it was "mechanico" (4 R.R. 162; D.E. 7-13 at 164).  Petitioner asserts that this exchange elicited prejudicial evidence that he was involved with the notorious Medellin drug cartel.

The trial court found that petitioner failed to show that his trial attorney was deficient in his questioning because the "Medellin" reference had already been made and the officer's response was vague and unspecific, such that it neither helped nor hurt

petitioner.  Ex Parte Espinoza, WR-75,126-01 at 114 (D.E. 7-19 at 119).  Petitioner has

not argued or presented evidence showing that this conclusion was error under the

AEDPA standards and so has not demonstrated that he is entitled to habeas relief on this

issue.

### (g) Failed to Raise a Confrontation Clause Objection

Petitioner argues that his attorney was ineffective because he did not raise a

confrontation clause objection to the introduction of the recorded telephone calls.  The

trial court found that the failure to object was not ineffective assistance.

The Sixth Amendment's confrontation clause provides that in all criminal

prosecutions, "the accused shall enjoy the right ... to be confronted with the witnesses

against him."  The guarantee applies to both federal and state prosecutions.  Crawford v.

Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004).  The

provision bars "admission of testimonial statements of a witness who did not appear at

trial unless he was unavailable to testify, and the defendant had had a prior opportunity

for cross-examination."  Id., 541 U.S. at 53-54, 124 S.Ct. at 1365.  Only "testimonial"

statements cause the declarant to be a "witness" within the meaning of the confrontation

clause.  Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Testimony typically is a "'solemn declaration or affirmation made for the purpose

of establishing or proving some fact.'" Crawford, 541 U.S. at 51, 124 S.Ct. at 1364 (citing

2 N. Webster, An American Dictionary of the English Language (1828)).  "An accuser

who makes a formal statement to government officers bears testimony in a sense that a

22

person who makes a casual remark to an acquaintance does not." Crawford, 541 U.S. at 51, 124 S.Ct. at 1364. Testimonial statements include, but are not limited to (1) *ex parte* in-court testimony or its functional equivalent; (2) extrajudicial statements contained in formalized testimonial materials, such as confessions, affidavits, depositions or prior testimony and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial date. Id., 541 U.S. at 51-52, 124 S.Ct. at 1364.

The statements to which petitioner claims his attorney should have objected would not be considered "testimonial" under the definition used by the Supreme Court. They were informal statements made to parties outside the judicial process and an objective witness would not reasonably believe that the statements would be available for use at a later trial date. See Davis, 547 U.S. at 825 (citing Bourjaily v. United States, 483 U.S. 171, 181-184, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)) and Dutton v. Evans, 400 U.S. 74, 87-89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970))(statements made unwittingly to a government informant and statements from one prisoner to another are nontestimonial).

Because the statements were nontestimonial, the confrontation clause does not apply. Accordingly, petitioner's attorney's failure to object on confrontation clause grounds was not ineffective assistance of counsel.

**(h) Failed to Request an Instruction on Accomplice Witness Testimony**

Petitioner argues that his attorney was ineffective for failing to request an instruction on accomplice witness testimony. Under Texas law, "A conviction cannot be

23

had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14. Petitioner argues that the jury should have been told that the evidence given by Ozuna on the audio tape needed to be corroborated.

The trial court found that because Ozuna did not testify at petitioner's trial, she was not an accomplice witness and that petitioner's attorney was not ineffective for failing to request an accomplice-witness instruction. Ex Parte Espinoza, WR-75,126-01 at 114 (D.E. 7-19 at 119). The trial court's finding was correct. Only in-court accomplice testimony is subject to the article 38.14 requirement of corroboration. Maynard v. State, 166 S.W.3d 403, 410 (Tex. App. – Austin 2005, pet. ref'd)(citing Bingham v. State, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995)(op. on reh'g). Respondent is entitled to summary judgment on this issue.

**(i) Failed to Timely Secure Petitioner's Presence at Hearing**

Petitioner claims his attorney was ineffective for failing to timely seek a bench warrant so petitioner could be present at the hearing on the motion for new trial filed on his behalf. The record shows that although petitioner's attorney sought to have petitioner "bench warranted" to appear at the hearing, the warrant did not properly identify petitioner and so he was not released from custody to attend the hearing (7 R.R. 3, 19-21; D.E. 7-16 at 4, 20-22). His attorney chose to go forward with the hearing and waived petitioner's appearance ( 7 R.R. 3-4; D.E. 7-16 at 4-5).

24

Petitioner's attorney stated that he depended primarily on legal arguments to support the grounds raised in the motion for new trial and did not intend to have petitioner testify at the hearing.  In addition, the attorney thought he had taken the necessary steps to have petitioner appear at the hearing.  Ex Parte Espinoza, WR-75,126-01 at 80-81 (D.E. 7-19 at 85-86).  The state habeas court found the attorney's statement credible and concluded that petitioner had failed to show that he could have added anything in support of the grounds raised in his motion for new trial or that his absence from the hearing harmed him and that consequently, his attorney was not ineffective. Ex Parte Espinoza, WR-75,126-01 at 113 (D.E. 7-19 at 18).

The right to be present at trial and confront witnesses is fundamental and essential to a fair trial.  Coons v. State, 758 S.W.2d 330, 339 (Tex. App. – Houston [14th Dist.] 1988, pet. ref'd)(citations omitted).  The right is protected by Article I, section 10 of the Texas Constitution and the Sixth Amendment of the United States Constitution.  Id.  The defendant's right of attendance also includes a hearing on a motion for new trial.  Id. (citing Tex. Code. Crim. Proc. Ann., art. 33.03 (Vernon Supp. 1988)).  A defendant may waive his right to be present at a motion for new trial.  Id. (citation omitted).  On direct appeal, reversal is required only where the defendant desires to be present at the hearing and is denied that right.  Id. (citations omitted).

In this case, petitioner argues that he did not personally waive his right to appear at the hearing on the motion for new trial and that he believed he would present evidence of his incompetency to stand trial or on his insanity defense (D.E. 1-1, p. 24).  It will be

25

assumed for purposes of this summary judgment motion that petitioner wished to attend the hearing and that his attorney's failure to secure his attendance fell below an objective standard of reasonableness.

Under Strickland, petitioner must also show that his attorney's error was so serious as to deprive the defendant of a fair trial whose result is reliable. Petitioner asserts that he wanted to present evidence of his mental impairments, but as discussed above, Dr. Capitaine's report did not find that petitioner was either incompetent to stand trial or insane at the time the offense was committed and his attorney did not base his motion for new trial on either of those issues. In addition, the grounds raised by petitioner's attorney were legal rather than factual and petitioner's testimony was not relevant to their disposition. See Mot. for New Trial, 1 C.R. 189-193; D.E. 7-8 at 68-72). Accordingly, because petitioner cannot show that his testimony would have affected the outcome of the hearing, he cannot show that his attorney's failure to secure his presence at the trial deprived him of a fair trial. Therefore, summary judgment should be entered for respondent on this issue.

### 3. Cumulative Error

Petitioner argues that his attorney's errors, taken together, amounted to ineffective assistance of counsel. The state habeas court found that because petitioner's individual grounds for relief had no merit, he could not show that the cumulative effect of the alleged errors violated his constitutional rights. Ex Parte Espinoza, WR-75,126-01 at 118 (D.E. 7-19 at 123).

26

The Fifth Circuit has held the following:

[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992)(citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973)).  In this case, petitioner identified only one example of conduct by his attorney that fell below an objective standard of reasonableness–the failure to bench warrant him to the hearing on the motion for new trial.  None of the other allegations support a conclusion that his attorney provided ineffective assistance.  Therefore, petitioner cannot show that the trial was "so infected" that the conviction violated his due process rights.  Accordingly, his attorney did not provide ineffective assistance of counsel based on cumulative error.

### 4.  Ineffective Assistance by Appellate Attorney

Petitioner argues that his attorney was ineffective for failing to argue that the evidence in his case was insufficient to support his conviction.  He asserts that his attorney should have argued that the evidence was insufficient to show that he attempted to induce the would-be hit man to kill the victim for remuneration because there was no evidence that he intended to cause the victim's death or that he had any knowledge of the forty dollars paid to the hit man (D.E. 1-2, p. 21).  The state habeas court found that the evidence was more than sufficient to support petitioner's conviction and that he was not

entitled to relief on the ground that his appellate attorney provided ineffective assistance. Ex Parte Espinoza, WR-75,126-01 at 118-119 (D.E. 7-19 at 123-124).

A criminal defendant has a constitutional right to the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Claims of ineffective assistance of counsel on appeal are analyzed under the Strickland standard. United States v. Dovalina, 262 F.3d 472, 474 (5th Cir. 2001)(petitioner must show that his attorney's performance was deficient and that the deficiency caused him prejudice)(citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). However, the Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit. Evitts, 469 U.S. at 394, 105 S.Ct. at 835.

A reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). Where an attorney fails to adequately brief an issue on direct appeal, petitioner must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue. Dovalina, 262 F.3d at 474-475 (citing Jones v. Jones, 163 F.3d 285, 302 (5th Cir. 1998)). The petitioner must then show that the deficient performance led to a fundamentally unfair and unreliable result. Id. (citing Goodwin v. Johnson, 132 F.3d 162, 176 (5th Cir. 1997).

When a defendant raises a legal sufficiency issue on direct appeal, the relevant argument is "whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(emphasis in original). Petitioner argues that there was insufficient evidence that he knew of the forty dollars or that he offered the forty dollars to the hit man. Petitioner is correct in that the record shows that Ozuna offered the money (which the confidential informant gave to her) to the hit man and that petitioner was not involved in the exchange of money.

Nevertheless, the verdict form contained an instruction on the law of parties, which instructed the jurors that if petitioner knew of Ozuna's intent to commit capital murder and "acted with intent to promote or assist the commission of the offense . . . and by encouraging, directing, aiding, or attempting to aid Herminia Ozuna to commit the offense . . . then you will find the defendant guilty of the offense of Solicitation to commit Capital Murder." Ex Parte Espinoza, WR-75,126-01 at 129-130 (D.E. 7-19 at 134-135). Even if petitioner's attorney had argued that there was insufficient evidence to show that petitioner paid any money to the hit man, the Court of Appeals would have affirmed the jury verdict based on the law of parties. See Tex. Penal Code § 7.02 (a)(2) and Edwards v. State, 956 S.W.2d 687 (Tex. App. –Texarkana 1997, no pet.)(citing Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)(evidence is sufficient to support a conviction under the law of parties where the defendant is physically present and encourages the commission of the offense, either by words or agreement). Because

29

petitioner cannot show that he was prejudiced by his appellate attorney's decision not to make a sufficiency of the evidence argument, and thus cannot show that the state habeas court determination was unreasonable, he is not entitled to relief on this issue.

### 5.  Due Process Violations

### (a) Trial Court Failed to Hold Hearing

Petitioner argues that his right to due process was violated when the trial court failed to hold a hearing on whether he was insane at the time of the offense, whether he was competent to stand trial or both.  The state habeas court found that the complaint regarding the competency claim was not cognizable on habeas review because it was not raised on direct appeal.  In the alternative, the court found that it was not an error to not hold a competency hearing and even if it were an error, it was harmless.

Whether competency exists at the time of trial is left to the discretion of the trial judge.  Rice v. State, 991 S.W.2d 953, 956-957 (Tex. App. – Fort Worth 1999, pet. ref'd). To trigger a competency hearing, the court must have notice of some evidence that sufficiently creates a bona fide doubt in the mind of the court about whether defendant meets the test of legal competence.  Id., 991 S.W.3d at 957 (citing Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1991)).  The test of legal competence to stand trial is whether the defendant has the present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.  Id. (citing Tex. Code Crim. Proc. Ann. art. 46.02 § 1(a)(Vernon 1979).  "Generally, a bona fide doubt about a defendant's legal competence is raised only

if the evidence indicates recent severe mental illness, moderate mental retardation, or truly bizarre acts by the defendant." Id. (citing Collier, 959 S.W.2d at 625). The test is not whether the defendant had some mental, behavioral, or psychological impairment, but whether he had the ability to consult with his attorney and understands the proceedings. Id. (collecting cases).

Petitioner's attorney did not contend that petitioner was incompetent to stand trial and the letters from Dr Capitaine did not support a finding that petitioner was incompetent. Nor is there any evidence in the record that petitioner engaged in bizarre acts before or during the trial. Therefore there was nothing in the record to suggest a bona fide doubt about petitioner's competency.

Petitioner asserts that even though he was referred to Dr. Capitaine for a mental health evaluation, he did not actually see Dr. Capitaine, but only spoke to one of his assistant's for five minutes. Nothing in the record indicates that petitioner brought this to the attention of either his attorney or the trial court. Without his having done so, there was no reason for the court to inquire or seek an additional evaluation.

Petitioner further argues that Dr. Capitaine's evaluation that he was not insane or incompetent was not dispositive of the issue, but should only have been considered evidence and that the court still had a duty to determine competence, citing in support Bell v. State, 814 S.W.2d 229, 232 (Tex. App–Houston [1st Dist] 1991, pet. ref'd). Bell is distinguishable from petitioner's case because there the defendant had previously been declared incompetent to stand trial. Given the previous finding, the court held that the

31

petitioner could not be found competent unless there was a judicial determination of competency.  Id.  Petitioner in this case has never been declared incompetent.

The trial court in this case was under no obligation to hold a hearing on petitioner's competence to stand trial.  Accordingly, judgment should be entered for respondent on this issue.

### (b) Trial Court Allowed Him to Plea to Fundamentally Defective Indictment

Petitioner contends that when the prosecutor read the indictment to the jury, he omitted reference to Ozuna, petitioner's co-defendant, and that the omission caused the indictment to be fundamentally defective.  Ex Parte Espinoza, WR-75,126-01 at 122-123 (7-19 at 127-128);(3 R.R. 6-7; D.E. 7-12 at 8-9).  Petitioner's attorney objected that it was not a "direct reading of the indictment" and was overruled (3 R.R.7; D.E. 7-12 at 8-9).

The state habeas court found that because petitioner did not raise the issue on direct appeal, he forfeited the right to raise it in the state habeas proceeding and that, in the alternative, leaving out Ozuna's name was not an error  Ex Parte Espinoza, WR-75,126-01 at 119-120 (D.E. 7-19 at 124-125).  Petitioner has not shown how this determination was contrary to Supreme Court precedent, nor has he shown that he was prejudiced by the omission.  Accordingly, summary judgment should be entered for respondent on this issue.

### 6.  Trial Court Improperly Met with Jury

Petitioner asserts that he was denied his right to a fair trial because the court communicated with the jury both before and after the trial outside the presence of

32

petitioner or his counsel.  Petitioner's counsel raised this issue at the hearing on the

motion for new trial.  The court explained that while he often empanels jurors, that he did

not do so on the day petitioner's jury was empaneled, but even if he had done so, he does

not talk to the potential jurors about the case they will be hearing.  He did take juror

excuses on the day petitioner's jury was empaneled, but did not discuss the case with

them (7 R.R. 8-17; D.E. 7-16 at 9-18).  The court also explained that he met with the

jurors when the trial was over to tell them that they were excused and that they could

speak to the attorneys if they wished to do so (7 R.R. 9; D.E. 7-16 at 10).

The state habeas court found that the claim was not cognizable on habeas review

because it was not raised on appeal, and that in any event, the court committed no error.

Petitioner has presented no evidence to show that these findings were incorrect under the

AEDPA standard.  Therefore, he is not entitled to relief on this issue.

### C.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas

corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."

28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the

issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson,

211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because

"the district court that denies a petitioner relief is in the best position to determine

whether the petitioner has made a substantial showing of a denial of a constitutional right

on the issues before that court.  Further briefing and argument on the very issues the court

has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general

assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner

must show that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct.

1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that

jurists of reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed or denied on

procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right *and* that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling."  Slack, 120 S.Ct. at 1604, 529 U.S. at 484

(emphasis added).

In petitioner's case, it is recommended that one of his claims be denied on

procedural grounds and that the remaining claims be denied on the merits.  Reasonable

jurists would not find the assessment of the constitutional claims debatable or wrong.  If the district court orders that petitioner's habeas petition be denied and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

**<u>RECOMMENDATION</u>**

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment (D.E. 11) be granted and petitioner's application for habeas corpus relief be denied with prejudice.  It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 17th day of November, 2011.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).