**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **SAMUEL ESPINOZA,** | § | |
| | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  2:11-CV-00146** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent** | § | |

---

**ORDER ADOPTING MAGISTRATE JUDGE'S
MEMORANDUM AND RECOMMENDATION REGARDING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.      INTRODUCTION

Pending before the Court is Respondent's Motion for Summary Judgment. (D.E. 11.) On November 17, 2011, United States Magistrate Judge B. Janice Ellington signed a Memorandum and Recommendation addressing Respondent's Motion for Summary Judgment. (D.E. 15.)  The Magistrate Judge recommends that the Court grant Respondent's Motion for Summary Judgment and deny Petitioner's habeas corpus petition. (*Id*. at 1–2.)  Petitioner filed numerous objections to the Magistrate Judge's Memorandum and Recommendation. (D.E. 20.)

Petitioner is entitled to a de novo disposition of those portions of the Magistrate Judge's Memorandum and Recommendation to which timely objections were filed. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).  After reviewing the Magistrate Judge's findings of fact and conclusions of law, Petitioner's objections, and all other relevant parts of the record, and having made a de novo disposition of those portions of the

Magistrate Judge's recommended disposition to which objections were raised, the Court overrules Petitioner's objections and adopts as its own the findings and conclusions of the Magistrate Judge, as supplemented herein.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2006, Petitioner Samuel Espinoza was found guilty of solicitation to commit capital murder, a first degree felony, in the 214th Judicial District Court of Nueces County, Texas. (D.E. 7-14, Tr. vol. V, 40:21–24.)   The indictment charged that on or about April 27, 2005, Petitioner requested, commanded, or attempted to induce John Lubbock, an undercover agent, to cause the death of Federico Hernandez, the husband of Ms. Herminia Ozuna. (D.E. 7-7 at 8–9.)   Petitioner and Ms. Ozuna were romantically involved and working together to arrange a drug transaction.   In the course of negotiating the drug deal with a confidential police informant, Ms. Ozuna inquired whether the informant knew anybody she could hire to kill her husband.   The confidential informant set up a meeting between Ms. Ozuna and John Lubbock, a retired Texas Department of Public Safety Officer who agreed to pose as the "hit man."   The confidential informant indicated to Ms. Ozuna that the murder would cost $5,000, and she would have to pay the hit man half of the money up front.

Petitioner was aware of the murder-for-hire scheme through his dealings with Ms. Ozuna. Petitioner accompanied Ms. Ozuna to the meeting with Mr. Lubbock, which took place in a Corpus Christi motel room.   The meeting was videotaped, and the videotape was shown to the jury during trial.   During the meeting, Ms. Ozuna presented Mr. Lubbock with a picture of her husband, a note with his address, and forty dollars as a down payment.   Petitioner asserted his agreement with the murder-for-hire plan, and he can be seen on the videotape mimicking a pistol with his hand.   At trial, Mr. Lubbock testified that Petitioner indicated he wanted the husband

2

killed with a pistol by holding his hand and saying, "I want it done that way." (D.E. 7-12, Tr. vol. III, 205:10–206:10.)   In the transcript of the videotape, Petitioner does not use those exact words, but he does assent to the murder. (Tr. vol. III, 196:14–200:10.)

After finding Petitioner guilty of solicitation to commit capital murder, the jury sentenced Petitioner to sixty years confinement in the Institutional Division of the Texas Department of Criminal Justice. (D.E. 7-15, Tr. vol. VI, 52:16–21.)   Following his conviction and sentencing, Petitioner filed a motion for a new trial which was denied by the trial court. (D.E. 7-8 at 87–90; D.E. 7-16, Tr. vol. VII, 21:19–20.)   Petitioner then filed a direct appeal with the Court of Appeals for the Thirteenth District of Texas.   The Court of Appeals affirmed the trial court's judgment. (D.E. 7-3.)   Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals, which was refused. (D.E. 7-4 & 7-5.)

Petitioner filed a petition for habeas corpus relief in state court on August 22, 2008. (D.E. 7-19 at 7–65.)   On November 23, 2010, the trial court entered its proposed findings of fact and conclusions of law. (D.E. 7-19 at 113–26.)   The Texas Court of Criminal Appeals denied Petitioner's application for a writ of habeas corpus without a written order on the findings of the trial court. (D.E. 7-19 at 2.)   Petitioner filed a petition for habeas corpus relief with this Court on April 30, 2011 pursuant to 28 U.S.C. §§2241 and 2254, claiming that his constitutional rights were violated during his trial and appellate proceedings because of ineffective assistance of counsel, lack of due process, and improper communication between the trial judge and the jury. (D.E. 1.)

Respondent filed a Motion for Summary Judgment, requesting that Petitioner's application for habeas corpus relief be dismissed with prejudice. (D.E. 11.)   United States Magistrate Judge B. Janice Ellington filed a Memorandum and Opinion, recommending that the

Court grant Respondent's Motion for Summary Judgment and deny Petitioner's request for habeas relief. (D.E. 15 at 1–2.)  Petitioner objects to the Magistrate Judge's Memorandum and Recommendation in its entirety and requests an evidentiary hearing. (D.E. 20.)

## III.   STANDARD OF REVIEW

Petitions for habeas corpus relief are governed by the standard set forth by Congress in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Under the AEDPA standard, a state prisoner may not obtain relief with respect to any claim for habeas corpus relief that was adjudicated on the merits in state court, unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404–08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005).  Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398

(2011).  Additionally, a state court's findings of fact are presumed to be correct and the petitioner

has the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. §

2254(e)(1).

## IV.    PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARRING

Petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims

to develop the state court record. (D.E. 20 at 5.)  Under the AEDPA, the Court shall not hold an

evidentiary hearing unless the applicant shows that—

> (A)    the claim relies on
> (i) a new rule of constitutional law, made retroactive to cases on
> collateral review by the Supreme Court, that was previously
> unavailable; or
> (ii) a factual predicate that could not have been previously
> discovered through the exercise of due diligence; and
>
> (B)    the facts underlying the claim would be sufficient to establish by
> clear and convincing evidence that but for constitutional error, no
> reasonable fact-finder would have found the applicant guilty of the
> underlying offense.

28 U.S.C. § 2254(e).

The state court requested submissions by the parties on any pertinent factual information

regarding Petitioner's claims. (D.E. 7-19 at 79.)  There is no record of any submissions by

Petitioner.  Petitioner had the opportunity to develop the record in state court, but failed to do so.

Petitioner has not shown that his claim relies on a new, retroactive constitutional law or a factual

predicate that could not have been previously discovered.  Moreover, Petitioner failed to show

that, if he were granted a hearing and his allegations were proven true, he is entitled to relief. *See*

*Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000).  Therefore, the Court denies Petitioner's

request for an evidentiary hearing.

V.     **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

Ineffective assistance of counsel claims are analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   Petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687-88.   Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689.   In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under §2254(d).   "When §2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington vs. Richter*, ---U.S.---, 131 S. Ct. 770, 778 (2011).

A.     **Trial Counsel's Failure to Have Petitioner Testify at the Suppression Hearing**

The trial court held a suppression hearing to address the admissibility of a statement Petitioner made to a law enforcement officer.   Petitioner did not testify at the hearing.   As part of the state habeas record, Petitioner's attorney submitted an affidavit regarding the ineffective assistance of counsel claims.   (D.E. 7-19 at 82-86).

The state court found that Petitioner did not ask to testify at the suppression hearing, nor did he indicate to his trial counsel that he could have testified that he misunderstood his legal rights, or that he did not voluntarily relinquish those rights when he made his statement. (D.E. 7-19 at 113–14.)   The state court also found that defense counsel made a tactical decision not to call Petitioner at the suppression hearing because his testimony could have been used to

6

impeach him at trial. (D.E. 7-19 at 114.)   The state court concluded that Petitioner received competent representation.  (D.E. 7-19 at 113–14, 118.)

This Court finds that the state court's decision did not constitute an unreasonable determination of the facts, nor was it contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Respondent is entitled to summary judgment on this issue.

B.       **Trial Counsel's Failure to Have Petitioner Testify at Trial**

Every criminal defendant possesses a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987).  Trial counsel has a duty to advise his client regarding his right to testify and assist him in deciding whether or not to testify; however, the right to testify can only be waived by the accused. *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).  A violation of a defendant's right to testify occurs when counsel does not properly inform the defendant of his rights, or the decision not to testify is made against the defendant's will.  In such cases, the defendant's decision is not a knowing, voluntary, and intelligent waiver of his right to testify. *Id*.

Trial counsel stated in his affidavit that he urged Petitioner to testify during the guilt-innocence phase of the trial, but Petitioner refused to do so.  (D.E. 17-9 at 84.)  After the close of evidence, Petitioner testified outside the presence of the jury that it was his decision not to testify, and his decision was not influenced by his counsel.   (D.E. 7-14, Tr. vol. V, 6:25–7:9.) The state court found that Petitioner's trial counsel consulted with his client on whether he should testify during the guilt-innocence phase of his trial, and Petitioner knowingly and voluntarily refused to testify. (D.E. 7-19 at 116.)

Petitioner seeks to supplement the record with an affidavit from his mother indicating that, from the beginning of the criminal proceedings, Petitioner's trial counsel never intended to call him to testify. (D.E. 20 at 5 & 7.)  This Court's review under the AEDPA is limited to the record that was before the state court so this additional evidence will not be considered.

This Court concludes that Petitioner failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.   Accordingly, Respondent is entitled to summary judgment on this issue.

### C. Trial Counsel's Failure to Have Petitioner Testify at Punishment Phase of Trial

Petitioner argues that had he testified about his mental problems at the punishment phase of the trial, he could have influenced the jury to impose a lighter sentence. (D.E. 20 at 8.)   The state court found that Petitioner failed to present any evidence indicating that Petitioner wished to testify at the punishment phase or that his testimony could have influenced the jury to impose a lesser sentence and thus Petitioner failed to show that his attorney was ineffective. (D.E. 7-19 at 117.)

This Court concludes that Petitioner failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.   Accordingly, Respondent is entitled to summary judgment on this issue.

### D. Trial Counsel's Failure to Call Dr. Capitaine at the Suppression Hearing and at Trial

Prior to trial, Petitioner was examined by Dr. Raul Capitaine, a psychiatrist, to determine whether Petitioner was competent to stand trial and whether Petitioner was insane at the time of

the offense. (D.E. 7-7 at 74–77).  Dr. Capitaine opined that Petitioner was competent to stand trial and was not insane or mentally retarded at the time of the offense. (D.E. 7-7 at 78–82). Petitioner argues that Dr. Capitaine could have testified at the suppression hearing and at trial concerning Petitioner's dementia, his episodes of uncontrollable violence, and his inability to understand his legal rights.  Petitioner claims this testimony could have rebutted the state's evidence regarding the voluntariness of his statement.  Additionally, Dr. Capitaine could have testified regarding Petitioner's insanity and whether Petitioner understood "aiding and abetting" and the defense of entrapment. (D.E. 1 at 10–13, 18–20; D.E. 20 at 8–9.)

Trial counsel stated in his affidavit that Dr. Capitaine's testimony would have had little relevance to the issues and defenses raised at the suppression hearing or trial and that Dr. Capitaine's testimony could have been very damaging because he had knowledge of unfavorable mental health reports and records indicating that, among other things, Petitioner beat his dogs, was prone to angry outbursts, and had a history of unprovoked assaultive conduct. (D.E. 7-19 at 85, 113, 116–17.)  Because Dr. Capitaine's report indicated that Petitioner's mental health problems did not interfere with his ability to discriminate between right and wrong, trial counsel believed that rather than pursue an insanity defense, the best trial strategy was to show that Petitioner did not know of Ozuna's plan to hire a killer at the time he drove her to the meeting and that he did nothing meaningful to encourage or aid her in that plan.  (D.E. 7-19 at 83–84.)

The state court found that trial counsel made a reasonable strategic decision not to call Dr. Capitaine to testify.  This Court concludes that Petitioner failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

### E.      Trial Counsel's Failure to Call Any Witnesses During Trial

Ineffective assistance of counsel claims based on a failure to call witnesses at trial present a very difficult burden for habeas petitioners to overcome because they fall within the area of trial strategy, which is the domain of trial counsel. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  For this reason, such claims are disfavored. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983).  Petitioner must demonstrate prejudice, which requires that he show that a particular witness would have testified at trial, and that the testimony would have been favorable to Petitioner. *Alexander*, 775 F.2d at 602.

The state court found that Petitioner failed to provide his counsel with the names of any witnesses who could dispute Petitioner's role in the offense, and despite his best efforts, trial counsel failed to find any witnesses.  Therefore, trial counsel's actions did not constitute ineffective assistance of counsel.  (D.E. 7-19 at 117.)

This Court concludes that Petitioner failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

### F.      Trial Counsel's Alleged Failure to Present a Defense

Petitioner argues that trial counsel failed to advance an insanity defense or make use of the available psychiatric evidence.  As previously stated, Petitioner was examined by Dr. Capitaine to determine his competency to stand trial and to consider the viability of an insanity defense. (D.E. 7-7 at 74–77.)  Dr. Capitaine concluded that Petitioner was competent to stand trial and that he was able to distinguish between right and wrong and conform his behavior to the requirements of the law. (D.E. 7-7 at 78–90.)  Based on Dr. Capitaine's report, as well as his own

observations, Petitioner's trial counsel concluded that pursuing an insanity defense would be a poor trial strategy because there was little indication that the defense applied, and Petitioner would be tacitly admitting he was guilty. (D.E. 7-19 at 83–84.)

The state court found that there was no evidence to support an insanity defense; therefore, the state court concluded that Petitioner's trial counsel was not ineffective for failing to present an insanity defense. (D.E. 7-19 at 114–15, 122.)  This Court concludes that Petitioner failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Respondent is entitled to summary judgment on this issue.

### G. Trial Counsel's Failure to Object to Evidence Referring to Petitioner as a Drug Dealer and Smuggler

Petitioner argues that his attorney should have objected to evidence that Petitioner was involved in a drug transaction because it was prejudicial.  At the beginning of the trial, trial counsel moved the court to order the State not to refer to any extraneous offenses by Petitioner, including any involvement with drugs or a drug conspiracy. (D.E. 7-11, Tr. vol. II, 4:21–5:2.) The trial judge denied counsel's motion and instructed counsel that it was not necessary for him to continue to object because a record of his objection had already been made. (Tr. vol. II, 5:18–5:22.)

The state court found that trial counsel's assistance was not ineffective because he had objected to the evidence.  (D.E. 7-19 at 119.)  Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

**H.    Trial Counsel's Elicitation of Testimony Referencing the Medellin Cartel of Mexico**

At trial, Sergeant Gerald Silva of the Nueces County Sheriff's Department testified for the prosecution concerning several recorded telephone conversations that Petitioner's co-defendant, Ms. Ozuna, made while in custody following her arrest. (D.E. 7-13, Tr. vol. IV, 93–159.)  During one of the conversations that was played for the jury, someone states, "So, but I mean, I don't have the connections that Sam and his mom have.  I mean, he works for the damn Medallines, and they have connections all over the damn place." (Tr. vol. IV, 123:8–12.)  On cross examination, the following exchange occurred between Petitioner's trial counsel and Sergeant Silva:

> Mr. DICARLO:  Your Honor, I had—I had a question.  He said—the witness said that he was Spanish-speaking, and there was a phrase that I thought was in Spanish used that was—I was gonna ask him about just one word.  Is that all right?
> THE COURT:  Of course.
> Q.    (By Mr. DiCarlo) What is—there was something said about work for medejinas.  What is a medejinas?
> A.    I do not know.
> Q.    You don't know that?  Medellin?  Do you know what that is?
> A.    It's South America.  I mean, the only time I've ever heard that term is in reference to people that are involved in drugs.
> Q.    What is a mechanic in Spanish, do you know?
> A.    The commonly used word is mecanico, which is not an appropriate—not the correct Spanish word.
> Q.    Okay.  Is there any other word that you know of—
> A.    No.

(Tr. vol. IV, 161–62.)  Petitioner asserts that his attorney's elicitation of this evidence was prejudicial and thus his attorney was ineffective. (D.E. 20 at 12.)

The state court found that the "Medellin" reference had already been made before the issue was raised by trial counsel, and Officer Silva's response to trial counsel's questioning on cross-examination was vague and unspecific, such that it neither helped nor hurt Petitioner.

12

(D.E. 17-9 at 119.)   Accordingly, the state court concluded that Petitioner failed to show trial counsel's strategy was unsound or that his questioning was prejudicial. (*Id*.)   This Court concludes that the state court's decision was not based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

I.       **Trial Counsel's Failure to Raise a Confrontation Clause Objection**

Petitioner argues that trial counsel should have objected to the admission of recorded telephone conversations (D.E. 7-13, Tr. vol. IV, 93–159) which his co-defendant, Ms. Ozuna, made from jail while awaiting trial. (D.E. 1-2 at 14–15.)  Petitioner claims that the statements are testimonial and their admission violated his Sixth Amendment right to confront the witnesses against him.  (D.E. 1-2 at 14–15; D.E. 20 at 13–14.)

The Sixth Amendment confrontation clause provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.  The provision bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross examination. *Crawford vs. Washington*, 541 U.S. 36, 53-54 (2004).   Testimony typically is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).   An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a causal remark to an acquaintance does not. *Id.*.  Testimonial statements include, but are not limited to (1) *ex parte* in-court testimony or its functional equivalent; (2) extrajudicial statements contained in formalized testimonial materials, such as confessions, affidavits, depositions or prior testimony and (3) statements that were made under circumstances

13

which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial date. *Id*. at 51–52.

The state court found that the recorded telephone conversations were initiated by Ms. Ozuna, not law enforcement, and they constituted spontaneous statements she made to private persons; as such, they did not qualify as "testimonial statements" barred by the confrontation clause. (D.E. 7-19 at 120).  Consequently, the state court concluded that trial counsel did not provide ineffective assistance by failing to object. (*Id*. at 123.)  Because the state court's decision is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and because the state court's determination of the facts was not unreasonable in light of the evidence presented to it, Petitioner's claim is without merit.  Respondent is therefore entitled to summary judgment on this issue.

### J.      Trial Counsel's Failure to Request an Instruction on Accomplice Witness Testimony

Petitioner argues that the testimony of his co-defendant, Ms. Ozuna, was essential to the prosecution's case against him, and had the jury been informed that it could not convict him without some corroboration of his co-defendant's testimony, there is a reasonable probability that a rational jury would not have voted to convict.  (D.E. 1-2 at 6–7; D.E. 20 at 14–15.)

Article 38.14 of the Texas Code of Criminal Procedure states that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence . . . ."  Only in-court accomplice testimony, however, is subject to the accomplice rule. *Maynard v. State*, 166 S.W.3d 403, 410 (Tex. App. 2005).  Where there is no promise of immunity or leniency in exchange for an accomplice's testimony, then the justification for the rule—that an accomplice may be inclined to fabricate her testimony to save herself at the expense of her co-defendant—is lacking. *Bingham v. State*, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995).

The state court found that because Ms. Ozuna did not testify at trial, she was not an accomplice witness so Petitioner's trial counsel was not ineffective for failing to request an accomplice-witness instruction. (D.E. 7-19 at 119.)  This Court concludes that the state court's decision did not constitute an unreasonable determination of the facts, nor was it contrary to or based on an unreasonable application of clearly established Supreme Court precedent. Therefore, Respondent is entitled to summary judgment on this issue.

**K.    Trial Counsel's Failure to Timely Secure Petitioner's Presence at Hearing for a New Trial**

Petitioner was not released from custody to attend the hearing on the motion for new trial because trial counsel failed to properly identify him in a bench warrant.  Trial counsel did not seek a continuance of the hearing.  Petitioner asserts that he had a constitutional right to be present at the hearing and his presence at the hearing would have resulted in a different outcome. Petitioner wanted to attend the hearing to present evidence regarding his incompetency to stand trial and his insanity defense.  (D.E. 1-1 at 24–26; D.E. 20 at 15–17.)

Every defendant has a due process right under the Fourteenth Amendment to attend hearings where " 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934)).  This right is not absolute, particularly "when the presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–07.

The state court found that trial counsel did not intend to have Petitioner testify at the hearing on his motion for new trial, and that trial counsel was unaware of anything that Petitioner might have said at the hearing that would have assisted his cause. (D.E. 7-19 at 118.)  Moreover, the state court found that Petitioner failed to present any evidence that his presence would have

15

added anything to his motion for new trial, and therefore, he was not prejudiced. (*Id.*)  Based on these findings, the state court concluded that Petitioner failed to demonstrate he received ineffective assistance of counsel. (*Id.* at 118 & 122.)  This Court concludes that the state court's decision did not result from an unreasonable determination of the facts, nor was it contrary to or based on an unreasonable application of clearly established Supreme Court precedent. Therefore, Respondent is entitled to summary judgment on this issue.

### L.      Cumulative Error

Petitioner argues that his attorney's errors, taken together, amounted to ineffective assistance of counsel.  The state court found that because Petitioner's individual claims for habeas relief failed, he could not show that the cumulative effect of the alleged errors violated his constitutional right.  (D.E. 7-19 at 123.)  This Court concludes that the state court's decision was not contrary to, nor did it involve an unreasonable application of clearly established Supreme Court precedent, and it did not result from an unreasonable determination of the facts in light of the evidence before the court.  Accordingly, Respondent is entitled to summary judgment on this issue.

### M.      Ineffective Assistance of Appellate Counsel Claim

Petitioner claims that appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the evidence was legally insufficient to support a conviction for solicitation to commit capital murder. (D.E. 1-2 at 19–24.)  Petitioner argues that there was no evidence that he knew of the forty dollars or that he personally offered the money to the undercover agent posing as a hit man. (D.E. 1-2 at 22–23.) As remuneration is an element of solicitation, Petitioner argues that there was insufficient evidence to support his conviction. (*Id.*)

The relevant inquiry on a legal sufficiency claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the

essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   The trial court instructed the jury on the "law of parties" which allowed the jurors to find Petitioner guilty of solicitation to commit capital murder based on Ms. Ozuna's conduct if Petitioner knew of Ozuna's intent to commit capital murder and acted with intent to promote or assist the commission of the offense by encouraging, directing, aiding, or attempting to aid Ozuna in the commission of the offense. (D.E. 7-19 at 134.)

The state court concluded that Petitioner was not entitled to habeas relief because the evidence presented at trial was more than sufficient to support Petitioner's conviction. (D.E. 7-19 at 123).   This Court finds that the state court's decision was not contrary to, nor did it involve an unreasonable application of clearly established Supreme Court precedent, and it did not result from an unreasonable determination of the facts in light of the evidence before the court. Accordingly, Respondent is entitled to summary judgment on this issue.

## VI.    DUE PROCESS CLAIMS

### A.    Trial Court's Failure to Hold a Hearing to Evaluate Petitioner's Competency to Stand Trial

Petitioner claims that he was denied due process of law when the state court failed to conduct a competency hearing to determine whether he was fit to stand trial. (D.E. 20 at 22.) The state court found that Petitioner's due process claim was not cognizable on a habeas petition because Petitioner failed to raise the issue on direct appeal. (D.E. 7-19 at 124.)   However, the court considered the merits of Petitioner's due process claim and concluded (1) there was no evidence upon which a jury could have made a finding that Petitioner was incompetent, and therefore, the trial court did not err in failing to hold a competency hearing; and (2) any error in

failing to conduct a competency hearing was harmless and did not contribute to Petitioner's conviction or punishment. (*Id*.)

Petitioner contends that he can raise lack of competency for the first time on a petition for habeas corpus. (D.E. 20 at 23.)  Under Texas law, it appears that a "lack of competency can be raised for the first time by post-trial writ of habeas corpus." *Ex Parte Wilkinson*, 2008 WL 2078508, at *4 (Tex. App. 2008); *Godoy v. State*, 122 S.W.3d 315, 320 (Tex. App. 2003); *Ex Parte Yarborough*, 607 S.W.2d 565, 567 (Tex. Cr. App. 1980)).  However, the habeas petitioner has the burden to demonstrate a lack of competency to stand trial. *Id*.

Under article 46B.004, TEX. CODE CRIM. PROC., when there is a suggestion that the defendant may be incompetent to stand trial, the state court must make an informal inquiry of whether there is any evidence to support such a finding.  If, after an informal inquiry, the state court determines that there is evidence to suggest that the defendant may be incompetent, then it must order an examination by an expert. Art. 46B.005(a).  A formal trial on the issue of competency is not required if neither party requests a trial. Art. 46B.005(c).

Dr. Capitaine conducted a psychiatric evaluation of Petitioner before trial. (D.E. 7-18 at 77–103.)  He determined that Petitioner was not insane or retarded, and that he was competent to stand trial. (*Id*.)  Petitioner presents no evidence to rebut these findings.  Petitioner alleges that his mental evaluation was not performed by Dr. Capitaine, but by one of his assistants, and therefore, he was never properly evaluated. (D.E. 20 at 23.)  However, this issue was never brought to the trial judge's attention.  It was first raised by Petitioner in his state habeas petition. (D.E. 7-19 at 57.)

Petitioner's trial counsel stated in his affidavit that he believed Dr. Capitaine was correct in his conclusions and that Petitioner was able to understand the charge against him and assist in

18

his defense.   Counsel also stated that Petitioner appeared rational and responsive in his conversations with counsel. (*Id*. at 82.)  Petitioner never stated that he was mentally incompetent nor did he indicate to trial counsel that he desired to raise the competency issue at trial or sentencing. (*Id*.)

This Court concludes that the state court's decision that a competency hearing was not required did not result from an unreasonable determination of the facts in light of the available evidence, nor was it contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

**B.      Trial Court Permitted Petitioner to Plea to a Fundamentally Defective Indictment**

Petitioner contends that he was prejudiced because the trial judge did not have the full indictment read to the jury. (D.E. 1-3 at 2; D.E. 20 at 24.)   When the prosecutor read the indictment, he omitted any reference to Petitioner's co-defendant, Herminia Ozuna. (D.E. 7-12, Tr. vol. III, 6:20–7:21.)  Trial counsel objected that this did not constitute a direct reading of the indictment. (Tr. vol. III, 7:7–8.)  Petitioner then entered a plea of not guilty. (Tr. vol. III, 7:24.) Petitioner argues that the state court erred by allowing Petitioner to plead to a fundamentally defective indictment and that the omission in the reading of the indictment led to trial counsel not requesting an instruction on accomplice witness testimony.  (D.E. 1-3 at 1–3; D.E. 20 at 24.)

The state court determined that Petitioner's claim was not cognizable on habeas review because he failed to raise the issue at trial or on direct appeal. (D.E. 7-19 at 124.)  Alternatively, the state court determined that the indictment was not defective and there was no error in not reading a co-defendant's name when the co-defendants are tried separately. (*Id*. at 124–25.)  The state court concluded that, at most, the omission of Ms. Ozuna's name constituted a violation of a procedural statute, which is not cognizable on a writ of habeas corpus. (*Id*. at 124.)

Petitioner failed to show that the state court's decision was based on an unreasonable determination of the facts or contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on this issue.

## VII.   CLAIM THAT THE TRIAL JUDGE IMPROPERLY MET WITH JURY

Petitioner claims that he was denied his right to a fair trial because the trial judge improperly communicated with the jury both before and after the trial outside the presence of Petitioner and his trial counsel. (D.E. 1-3 at 3–5; D.E. 20 at 24.)  The state court found that Petitioner's claim was not cognizable on habeas review, and that the trial judge committed no error by conducting the general assembly portion of the jury selection process and privately speaking with the jurors after the trial had ended, as neither of these periods were part of the trial. (D.E. 7-19 at 125.)  Petitioner failed to present any evidence or legal authority to support his claim that the state court's decision constituted an unreasonable determination of the facts or was contrary to or based on an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Respondent is entitled to summary judgment on this issue.

## VIII.   CERTIFICATE OF APPEALABILITY

Petitioner requests that the Court grant him a certificate of appealability. (D.E. 20 at 25.) Petitioner argues that reasonable jurists could find the district court's assessment of his constitutional claims debatable or wrong. (*Id*.)  And for those claims dismissed on procedural grounds, Petitioner argues that jurists of reason would find it debatable whether his habeas petition states a valid claim for denial of a constitutional right, and that jurists of reason would find it debatable whether the district court erred in its procedural ruling. (*Id*. at 25–26.)  The Court disagrees.  Accordingly, Petitioner's request for a certificate of appealability is denied.

## IX.     CONCLUSION

Having reviewed the findings of fact and conclusions of law in the Magistrate Judge's Memorandum and Recommendation (D.E. 15), Petitioner's objections (D.E. 20), and all other relevant documents from the record, and having made a de novo disposition of those portions of the Magistrate Judge's Memorandum and Recommendation to which objections were raised, the Court adopts as its own the findings and conclusions of the Magistrate Judge, as supplemented herein.  Accordingly, Petitioner's objections (D.E. 20) are **OVERRULED**; Respondent's Motion for Summary Judgment (D.E. 11) is **GRANTED**; this action is **DISMISSED WITH PREJUDICE**; and a Certificate of Appealability is **DENIED**.

**ORDERED** this 8th day of March 2012.

*Nelva Gonzales Ramos*
_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE